Better Bungalows, Inc. v. Commissioner.
Better Bungalows, Inc. v. Commissioner
Docket No. 66729.
United States Tax Court
T.C. Memo 1960-26; 1960 Tax Ct. Memo LEXIS 261; 19 T.C.M. (CCH) 145; T.C.M. (RIA) 60026; February 24, 1960
*261 Respondent's determination of basis for computing depreciation and gain on sale of beach bungalow properties upheld - Petitioner not allowed deduction for amortization of alleged bonus paid for mortgage. Andrew E. Hurley, Esq., for the petitioner. John A. Dunkel, Esq., for the respondent. DRENNEN
Memorandum Findings of Fact and Opinion DRENNEN, Judge: Respondent determined deficiencies in petitioner's income tax and addition to tax under section 291(a), I.R.C. 1939, as follows: Addition to Tax
Year
Deficiency
Sec. 291(a)
1948
$7,598.25
1949
5,452.91
1950
968.81
$193.76
The questions for our determination are: (1) The correct basis for computing depreciation on two groups of beach bungalow properties *262 owned by petitioner during part of the years in question; (2) the correct basis for computing gain or loss on the sale of one of these tracts in its entirety in the year 1948, and six lots of the other tract in 1949; and (3) whether petitioner is entitled to deduct for any of the taxable years amortization of an alleged bonus paid to a mortgagee in 1947. The petition raised an additional issue with respect to the deductibility of $7,500 in legal fees for the year 1949, but no evidence was presented with respect to this issue. Findings of Fact Petitioner is a corporation organized under the laws of New York with its principal office at 135 Beach 70th Street, New York, New York. Its income tax returns for the years involved were filed with the district director of internal revenue for the first district of New York. Irving Glaser has at all times during petitioner's existence been its president, a director and principal shareholder, and he was also president, a director and principal shareholder of Beach 71st Street Development Corporation, hereafter referred to as Beach. On July 16, 1934, Beach purchased certain real property located on Carleton Avenue (now Beach 71st Street) *263 in the Borough of Queens, City of New York, New York, comprised of lot Nos. 91 and 97. Lot 91 fronts 120 feet on Carleton Avenue with a depth of 90 feet. Lot 97 is adjacent to lot 91 and fronts 247.1 feet on Carleton Avenue with a depth of 90 feet and lies between lot 91 and the beach. As part consideration for the purchase of both lots, Beach executed a purchase money mortgage in the amount of $13,637.12 to June Development Company, Inc., the seller, and took title subject to, and assumed payment of, an existing mortgage in the amount of $7,250. On April 22, 1936, Beach borrowed $10,000 from Joseph Rose, payable $500 per annum until April 15, 1941, when the entire unpaid principal was due, secured by a mortgage on lot 91. On March 5, 1937, Beach borrowed $6,000 from Nathan B. Stern, payable in full on July 15, 1938, secured by a mortgage on lots 91 and 97. At sometime prior to January 1940 there were erected on lot 91, eighteen summer bungalow units. This parcel was referred to at the trial as the "18 unit property." In January 1940, petitioner acquired title to the 18-unit property from Beach. Other than the deed, no written instruments passed between the two corporations. *264 The consideration for the transfer was apparently the assumption by petitioner of existing liens and liabilities against the property, although it is not clear from the record whether petitioner acquired title subject to the liens and liabilities or assumed the liabilities. [1]
As of August 1, 1944, the original purchase money mortgage and the mortgage existing at the time Beach acquired the property were still outstanding, and the balance due on principal totaled $20,887.12. Interest in the amount of $9,112.88 had accrued on these mortgages as of said date. Satisfaction of the $10,000 mortgage on lot 91 to Joseph Rose was recorded September 5, 1944. Satisfaction of the $6,000 mortgage on lots 91 and 97 to Nathan B. Stern was recorded October 11, 1948. As of July 1, 1940, the assessed valuation of lots 91 and 97 as shown on the assessment rolls of the City of New York was as follows: Real Estate With
Real Estate
Improvements
Lot No.
Unimproved
Thereon
91
$ 9,500
$23,000
97
26,000
26,500
On October 1, 1948, petitioner sold lot 91 and the 18 bungalow units erected *265 thereon. The sale price was $56,000, paid as follows: Paid on contract
$ 5,600
Purchaser taking title subject
to existing mortgage in the
amount of
20,000
Purchase money mortgage
14,000
Cash on closing
16,400
Total
$56,000
The expenses of the sale included: Commissions
$1,000.00
Revenue stamps and recording
52.60
At the time of closing the above sale, petitioner paid its attorneys the amount of $7,000 as a legal fee for various services rendered. The fee was stated to be "for legal services rendered to date," and covered services other than those connected with the sale of the 18-unit property. On October 1, 1948, the date of the sale, the $14,000 purchase money mortgage was assigned to June Development Company for $9,350. On March 6, 1937, Beach purchased lot Nos. 1 and 88 located on the opposite side of Beach 71st Street from lots 91 and 97, and together referred to at the trial as the "93 unit property," from Nathan B. Stern at an undisclosed price. The conveyance to Beach was subject to real estate taxes, water charges and assessments, together with interest and penalties thereon accrued to the date of delivery of the deed. *266 Ninety-three summer bungalow rental units were erected on these lots prior to January 13, 1944. On September 13, 1937, Beach borrowed $6,000 from Nathan B. Stern, payable August 1, 1938, secured by a mortgage on lots 1 and 88. On the same date Beach also borrowed $10,000 from William Shefts, payable $5,000 on August 1, 1938, and $5,000 on August 1, 1939, secured by a mortgage on lots 1 and 88. On January 13, 1944, Beach conveyed lots 1 and 88 to petitioner for a stated consideration of $10 and subject to "mortgage of record and unpaid taxes and assessments now a lien on the above described premises." The deed indicates 55 cents in stamps were affixed. As of January 13, 1944, various taxes, water charges and assessments against lot 1 for years prior to 1944 in the total amount of $41,132.74 were unpaid. These taxes, charges and assessments, together with interest thereon to the date of payment totaling $25,578.36, were paid at various times during the years 1945, 1946 and 1947. As of January 13, 1944, various taxes, water charges and assessments against lot 88 for years prior to 1944 in the total amount of $37,721.44 were unpaid. These taxes, charges and assessments, together *267 with interest thereon to date of payment totaling $23,588.62, were paid at various times during the years 1945, 1946 and 1947. As of July 1, 1944, the assessed valuation of lots 1 and 88 as shown on the assessment rolls of the City of New York was as follows: Real Estate With
Real Estate
Improvements
Lot No.
Unimproved
Thereon
1
$44,000
$82,000
88
36,000
61,000
Satisfaction of the mortgage to Nathan B. Stern in the amount of $6,000 was recorded October 20, 1948. Satisfaction of the mortgage to William Shefts in the amount of $10,000 was recorded July 8, 1949. During June and July 1949, petitioner sold 6 of the 93 units located on lots 1 and 88. The gross sales price for all 6 units was $27,633, and the expenses of sale were $3,896.60, resulting in a net sales price of $23,736.40. During the years involved petitioner maintained no books of account but kept only a record of income and disbursements which was not available at the time of the trial. Petitioner is not entitled to a deduction for depreciation for the taxable year 1948 on the 18-unit property greater than the amount of $249.45 as determined by respondent. Petitioner is not entitled *268 to deductions for depreciation on the 93-unit property for the taxable years 1948, 1949 and 1950 greater than the respective amounts of $2,886.03, $2,792.94 and $2,699.85 as determined by respondent. Petitioner realized taxable gain from the sale of the 18-unit property in 1948 in the amount of $25,009.99 as determined by respondent. Petitioner realized taxable gain from the sale of 6 of the 93 units in 1949 in the amount of $16,307.80 as determined by respondent. Petitioner may not deduct amortization of an alleged bonus paid to a mortgagee for any of the taxable years involved. Opinion The above findings of primary facts are based on the rather confused oral testimony of petitioner's principal officer and shareholder, and certain documentary evidence offered by petitioner at the trial, the competency of some of which is quite doubtful. While the facts pertinent to the issues presented are of the type that would usually be determined from written instruments and records, no original records and not all of the pertinent documents were produced at the trial. Petitioner did not file a brief and we are not advised just how petitioner believes the evidence presented or the *269 facts proved by such evidence would support its claim that respondent erred in computing depreciation on the rental bungalows and gain on the sale of the properties sold. Allegations in the petition and remarks made by counsel for petitioner in his opening statement indicate that petitioner claims a cost basis in both the 18-unit property and the 93-unit property based on liens and liabilities against the properties existing at the time they were transferred from Beach to petitioner. There is nothing in the record to even suggest that any cash consideration passed from petitioner to Beach for these properties. Respondent determined the selling price of both groups of lots sold to be the amount reported by petitioner on its returns for the years 1948 and 1949. Respondent also used, in computing depreciation, the same rate of depreciation as claimed by petitioner on its returns. Counsel for petitioner stated in his opening statement that there was no dispute as to either the selling price or the rate of depreciation. Respondent also allowed the expenses of sale claimed by petitioner on its returns. The only dispute is in the basis for computing both depreciation and gain on sale. *270 With respect to the 18-unit property sold by petitioner in 1948, petitioner claimed on its return a cost basis of $55,000, being the same as the gross sales price, with no explanation as to how it was computed. In its petition, petitioner claimed a cost of land of $21,085.10, "Per I.R.A.," and cost of improvements of $27,000, but there is no explanation of how this was arrived at either in the petition or in the evidence. In the notice of deficiency respondent determined the unadjusted basis for the 18-unit property to be $29,400.34 and allocated $21,085.10 of this amount to the value of the land, being the same amount claimed by petitioner for the land, and the balance of $8,315.24 to the unadjusted basis of the improvements. The evidence with regard to the 18-unit property indicates that when Beach acquired the 18-unit property in 1934 there was an existing mortgage against the property in the amount of $7,250 and Beach gave a purchase money mortgage in the amount of $13,637.12, and that as of August 1, 1944, 4 years after petitioner acquired the property, interest in the amount of $9,112.88 had accrued on these mortgages. Petitioner's president and principal shareholder, Glaser, *271 testified that these mortgages were unpaid at the time petitioner acquired the property, but there is no evidence as to what part of the face amount remained unpaid in 1940 or how much interest had accrued by that time. The evidence indicates further that in 1936 Beach borrowed the amount of $10,000, secured by a mortgage on lot 91, and in 1937 borrowed $6,000, secured by a mortgage on lots 91 and 97. Satisfaction of these mortgages was recorded in 1944 and 1948, respectively, but there is no evidence, other than the testimony of Glaser to the effect that they were probably paid within a week or two prior to the date the satisfaction was recorded, to indicate how much was due on these mortgages at the time the property was acquired by petitioner. Furthermore, the $6,000 borrowed from Stern was secured by a mortgage on both lots 91 and 97, and lot 97 is not involved in the transactions here under consideration. Another exhibit indicates that there was a balance of $5,000 due on the Rose $10,000 mortgage as of January 1944, and that $3,000 was paid thereon during 1941-1943, after petitioner acquired the property. It also appears from a closing statement found in the files of the *272 attorneys representing petitioner in the sale of the 18-unit property, and offered in evidence by a member of that firm who had no knowledge of or connection with the transaction, that the purchasers of the property in 1948 assumed existing mortgages in the amount of $20,000. From such evidence we could only guess at the amount of liens and liabilities existing against this property at the time it was acquired by petitioner in 1940. Such evidence falls far short of that necessary to carry the burden of proving that respondent's determination of basis for both depreciation and gain or loss is wrong. Petitioner claims in its petition that the entire amount of the legal fee paid to its attorneys in October 1948 should be allowed as an expense of sale of the 18-unit property. Respondent allowed the full amount of expenses of sale claimed on the return, which included $3,500 in legal fees, and there is no evidence from which we can determine that any greater part of this fee was attributable to this transaction. Petitioner also claims in its petition that it is entitled to reduce the gain on the sale of the 18-unit property by the difference in the face amount of the purchase money *273 mortgage received from the purchaser on the sale of this property, which was $14,000, and the $9,350 price for which the mortgage was assigned to June Development Company after the transaction was completed. The subsequent sale of the purchase money mortgage would not reduce the selling price of the real estate but would be an entirely separate transaction. Insofar as we can determine from the record, petitioner did not claim a loss on the sale of this mortgage in its return nor did it claim a loss as such in its petition. Whether or not petitioner is entitled to a loss on the sale of the mortgage is therefore not in issue in this case. Furthermore, the only evidence of such a loss is that the mortgage was sold for $9,350, with no explanation of why or the circumstances surrounding such sale. We do not consider such evidence adequate proof of a deductible loss. Dorothy L. Sutherland, 32 T.C. 862 (June 30, 1959). With reference to the 93-unit property, petitioner claimed an unadjusted basis of $21,000 for the six bungalows sold on its 1949 return. In its petition, petitioner claimed a total cost in the 93 units of $167,366.83 and apportioned $73,296.03 thereof to the *274 land. Included in the total cost figure was $91,320.29 in property taxes accrued to January 1, 1944, $38,046.54 in interest on taxes accrued to January 1, 1944, $20,000 in stock issued to petitioner's shareholder, and $18,000 as the balance due on two mortgages on the property payable to Nathan B. Stern and William Shefts. There is no explanation as to why the $20,000 in stock should be included in the cost of the property. Respondent determined a total unadjusted basis in the entire 93 units of $131,016.65 and allocated this cost between land and improvements on the basis of the assessed values of land and improvements. Petitioner does not question this method of allocation. Respondent then deducts allowable depreciation from the date petitioner acquired the property to the date of sale, computed at the same rate used by petitioner, to arrive at adjusted basis for the entire property. He then allocates 6/93 of the entire basis to the six lots sold. This method of allocation was also used by petitioner in its petition. The only evidence with respect to liens or liabilities existing against the property at the time petitioner acquired it is an exhibit certified by the city recorder *275 of the City of New York that a total of $78,854.18 in taxes, water charges, and assessments accrued against this property prior to January 13, 1944, together with interest thereon to the date of payment in the amount of $51,166.98, was paid on various dates averaging approximately 2 years after January 13, 1944. It is apparent that a part of this interest would have accrued subsequent to the date petitioner acquired the property and would not have been a lien or liability against the property as of the date of acquisition. While the exhibit does not show the rate of interest applicable, a sampling thereof would indicate that the interest amounted to about 7 per cent per year. Two years' interest on $78,854.18 at 7 per cent per year equals $11,039.59. If this amount is deducted from the total interest paid as mentioned above, the resulting amount of $40,127.39 would approximate the amount of interest accrued as of the date petitioner acquired the property. The latter amount added to the total taxes, water charges and assessments would produce $118,981.57 which might be a fair estimate of the total of these local charges and interest thereon, accrued as of the date of acquisition. *276 The only evidence with respect to the liabilities secured by the two mortgages claimed to have been assumed by petitioner, one to Stern in the amount of $6,000 and the other to Shefts in the amount of $10,000, is that the mortgages were both executed on September 13, 1937, the underlying bonds were due in 1938 and 1939, respectively, and satisfaction of these mortgages was recorded on October 20, 1948 and July 8, 1949, respectively. There is no evidence of the unpaid balance due on these mortgages as of January 13, 1944 when petitioner acquired the property. However, if we assume that one-half of the face amount of the obligations was due on that date and added it to the estimated amount of local charges and interest as computed above, we would still be short of the total unadjusted basis in this property determined by respondent. It is, therefore, apparent that if we accept the evidence presented in terms quite favorable to petitioner, it still fails to show that respondent erred in determining the basis for computing depreciation and gain or loss on the sale of six of these units in 1949. The remaining issue raised by the petition is that respondent erred in disallowing amortization *277 of a bonus allegedly paid by petitioner for a loan of $75,000, secured by a mortgage on the 93-unit property made by petitioner in 1947. The only evidence on this question is the mortgage itself which says nothing about a $7,500 bonus, and testimony of Glaser that a bonus was paid at the time the loan was made in 1947. If we were to accept this flimsy evidence that a $7,500 bonus was actually paid, we would still have no evidence on which to determine how the bonus should be amortized. The due date of the bond secured by the mortgage does not appear in the mortgage, nor does the mortgage reveal how long it is to run. It only refers to the underlying bond, but the bond was not introduced into evidence. The underlying bond, and consequently the mortgage, might have been due in the year 1947 or it might have been due 20 years after that date. We have nothing upon which we could even base an estimate of the number of years over which the bonus should be amortized. Consequently, no deduction is allowable for bonus amortization. Respondent's determination of the basis for computing depreciation and gain or loss on the sale of these properties appears to be reasonable in the light of the *278 evidence presented. The burden of proof is on petitioner to show wherein respondent erred in this determination. Petitioner has failed to carry this burden. Respondent's determination is therefore sustained. Decision will be entered for the respondent. Footnotes
1. Neither the original nor a copy of the deed was offered in evidence.↩